## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

ELAINE WHEAT,

                 Plaintiff,

vs.

                                   Case No. 14-CV-611-JED-FHM

CAROLYN W. COLVIN,
Acting Commissioner, Social Security
Administration,

                 Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Elaine Wheat, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] The matter has been referred to the undersigned United States Magistrate Judge for report and recommendation.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept

---

[1] Plaintiff's October 4, 2011, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Luke Liter was held April 5, 2013. By decision dated May 9, 2013, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on August 8, 2014. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S.

197, 229 (1938)).  The court may neither reweigh the evidence nor substitute its judgment

for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d

799, 800 (10th Cir. 1991).  Even if the court would have reached a different conclusion, if

supported by substantial evidence, the Commissioner's decision stands. *Hamilton v.*

*Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 46 years old on the date of alleged onset of disability and 50 on the date

of the ALJ's denial decision.  She has a high school education and formerly worked as

restaurant manager.  She claims to have been unable to work since December 28, 2009,

as a result of lumbar back pain, obesity, fibromyalgia, and obstructive sleep apnea.

## The ALJ's Decision

The ALJ determined that Plaintiff is able to perform light work as defined in 20 C.F.R.

§ 404.1567(b) with additional limitations of:  frequent use of hand controls with the right

upper extremity and no limits on the left; ability to reach in all directions and handle, finger

and feel with the right upper extremity; ability to occasionally climb stairs or ramps; unable

to climb ladders, ropes or scaffolds; able to occasionally balance, stoop, kneel, crouch, and

crawl; unable to tolerate exposure to hazards such as unprotected heights or dangerous

moving machinery parts; and no exposure to dust, odors, fumes, or pulmonary irritants.

[R. 22].  Although Plaintiff is unable to perform her past relevant work, based on the

testimony of a vocational expert, the ALJ determined that there are a significant number

of jobs in the national economy that Plaintiff could perform with these limitations.  The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled.  *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

### Plaintiff's Allegations

Plaintiff asserts the RFC is not supported by substantial evidence[2] and the ALJ did not sustain the Commissioner's burden at step five.

### Analysis

For ease of analysis and discussion the undersigned has grouped Plaintiff's arguments into logical categories.

### Analysis of Medical Opinions

Plaintiff argues that the ALJ erred in relying on the opinions of non-examining, non-treating State Agency physicians who prepared the state agency report by giving them the greatest weight, when according to the regulations, the non-examining physicians are entitled to the least weight.  20 C.F.R. §§ 404.1527(c)(1)(2) and 416.927(c)(1)(2) provide that *generally* greater weight is given to opinions from treating sources.  However, §§ 404.1527(e)(2)(i) and 416.927(e)(2)(i) provide that state agency medical and psychological

---

[2] Plaintiff raises a number of disparate issues under the overly broad topic heading: "The ALJ's RFC Is Unsupported By The Substantial Evidence Of The Record As A Whole." [Dkt. 12, pp. 3-7]. Plaintiff's topic heading does not comply with the instructions contained in the Scheduling Order. Further, some of the issues do not address the question of substantial evidence, but question whether the ALJ correctly applied the applicable legal standards. These are different inquiries.

Plaintiff's counsel is strongly encouraged to clearly focus arguments as directed in the Scheduling Order:

> Plaintiff must list and number each specific error the Commissioner or the ALJ made in concluding that Plaintiff was not disabled.

[Dkt. 7]. [emphasis supplied].

consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation" whose findings must be considered as opinion evidence.

In this case the ALJ stated he gave the greatest weight to the state agency experts for the reason the reports reflect a thorough review of the record, are supportable, and consistent with the longitudinal review of the evidence of record.  [R. 29].  Although Plaintiff asserts this was error, she does not identify any contrary opinions offered by her treating physicians.  Instead she asserts that the state agency experts' opinions about her physical limitations and ability to perform light work "conflict with the recommendations of her treating and examining physicians as well as their findings."  [Dkt. 12, p. 4].  Plaintiff points to a January 4, 2012 note where her doctor instructed that thrombophlebitis would be treated with prescribed antibiotic, elevation of the leg, pressure, and heat.  [R. 419].  Nothing in the record suggests these instructions constitute permanent restrictions.

The undersigned finds no error in the ALJ's failure to discuss these particular instructions.  The ALJ is not required to discuss every piece of medical evidence in the record.  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, Plaintiff has not identified any physician's opinion in conflict with the state agency opinions.  The undersigned finds no error in the ALJ's treatment of the state agency opinions.

There is no merit to Plaintiff's contention that the ALJ erred by failing to address inconsistencies between his findings and the assessments made by the state agency

consultants.  In performing the Psychiatric Review Technique (PRT)[3] the ALJ found Plaintiff's attention deficit disorder (ADD) is medically determinable, but does not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities and therefore is non-severe.  [R. 19].  In assessing the severity of Plaintiff's ADD, the ALJ found Plaintiff has no limitations in activities of daily living, social functions, or in concentration, persistence, or pace.  [R. 19-20].  The state agency psychologist, Joy Kelly, Ph.D. performed the PRT analysis and found Plaintiff had mild limitations in the areas where the ALJ found no limitation.  [R. 461].  Plaintiff argues that the case should be remanded because the ALJ failed to resolve these inconsistencies.  Plaintiff points out that *Social Security Ruling* (SSR) 96-8p, 1996 WL 374184, requires the ALJ to explain how any material inconsistencies in the evidence were considered and resolved, and if the RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  [Dkt. 12, p. 4].

Plaintiff misapplies SSR 96-8p to the PRT Findings.  PRT findings are not RFC findings.  PRT findings are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The PRT findings do not constitute commentary or opinions about the ability to perform basic mental work-related activities.  As a result, the PRT findings do not have to undergo the explanation and analysis Plaintiff suggests.

---

[3]  When there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in the regulations and is required to document the application of the procedure, known as the psychiatric review technique (PRT), in the decision.  20 C.F.R. §§ 404.1520a(e), 416.920a(e), *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008)(discussing application of the psychiatric review technique by the ALJ), *Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir. 1995) (same).  The procedure for evaluating alleged mental impairments requires the ALJ to consider the effect of the mental impairment on four broad areas of functioning known as the "paragraph B" criteria: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation of extended duration.  *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00 (C).

Rather, the ALJ is required to include a specific findings as to the degree of limitation in each of the PRT categories.  20 C.F.R. §§ 404.1520a(e)(4) and 416.920a(e)(4).  The ALJ fully complied with this requirement when he explained the factual basis for his PRT findings in the decision.  [R. 19-20].  Plaintiff has not argued that the ALJ's PRT conclusions lack evidentiary support or are otherwise inaccurate.  The undersigned finds no basis for reversal in the ALJ's PRT findings or his treatment of the state agency psychologist's PRT findings.

<u>Alleged Factual Inaccuracies In ALJ's Decision</u>

Plaintiff contends the ALJ's decision is based on a factual error about what a December 22, 2011 MRI showed.  [Dkt. 12, p. 5].  Plaintiff argues that the ALJ's statement that the MRI "showed no foraminal stenosis and was negative for any disease of stenosis", [R. 27], is factually incorrect.  The undersigned finds that Plaintiff has not identified a factual error.

The ALJ's statement about the MRI referred to a January 20112 examination by Plaintiff's treating physician, Michael S. Ward, M.D.  In his notes Dr. Ward recorded, the following:

> very large woman with what appeared to be a spinal stenosis however after reviewing MRI it becomes apparent that there are no foraminal obstructions.  I suspect the patient has piriformis muscle problems and instructed her in exercise.  MRI is essentially negative for foraminal disease or spinal stenosis.

[R. 416].  Plaintiff's contention does not focus on Dr. Ward's note, but instead points to the MRI report, which was also cited by the ALJ and which reports findings of degenerative disc disease and osteoarthritis in the lower lumbar spine, as well as findings of stenosis.  [R. 433].  The undersigned finds that, at most, Plaintiff has identified a difference Dr. Ward's

interpretation of the MRI and the interpretation by the radiologist. The ALJ appropriately resolved the difference in interpretation in favor of Dr. Ward who is Plaintiff's treating physician. As the finder of fact, it is the responsibility of the ALJ, not the court, to resolve such conflicts in the evidence. To establish error, the Plaintiff must show that the evidence is so overwhelming that no reasonable ALJ would fail to make the finding Plaintiff asserts is proper. Absent such a showing, the court is bound by the determination made by the ALJ as the finder of fact. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive [.]" 42 U.S.C. § 405(g).[4]

The ALJ noted that Dr. Ward reported Plaintiff was noncompliant with most medications and that she refused pain medications. [R. 27]. The ALJ also noted that the reluctance for pain medications was attributed by Dr. Gilstrap to side effects of sedation. [R. 27, 403, 414]. Plaintiff argues that the ALJ misunderstood the record and erred in omitting to report that Plaintiff reported that narcotic medications were not effective and that Dr. Gilstrap confirmed that narcotic medications are not effective for the pain associated with fibromyalgia. There is no merit to Plaintiff's contention.

The undersigned finds that the ALJ did not misunderstand or unfairly represent the record. In the doctor's notes cited by the ALJ, [R. 27], Dr. Ward was treating Plaintiff in December 2011 for complaints of low back pain, radiating to the left thigh and right buttock, following a fall that occurred 10 days earlier. [R. 410-414]. Dr. Ward's notes report

---

[4] *See also Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007)(on appeal court reviews only sufficiency of evidence, not its weight); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (court may not reweigh evidence and displace agency choice between two fairly conflicting views, discussing meaning of substantial evidence); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) (evidence is insubstantial if it is overwhelmingly contradicted by other evidence).

> [P]atient noncompliant with most medications I have no idea
> whether she is taking them or not.  Patient was adamant about
> having her Adderall refilled and was less ready for any type of
> pain medication despite the "agonizing" pain in her lumbar
> sacral spine and radiating down both legs.

[R. 410].  Dr. Gilstrap's record is dated February 20, 2012.  Dr. Gilstrap was seeing Plaintiff

for an entirely different complaint–fibromyalgia.  [R. 403].  Dr. Gilstrap's comment about the

effectiveness of narcotic medications were related to fibromyalgia pain, not the "agonizing"

pain in Plaintiff's lumbar and sacral spine radiating down both legs following a fall

addressed by Dr. Ward.  The undersigned finds that, rather than demonstrating a

misunderstanding of the record, review of the notes cited by the ALJ reveals that the ALJ

fairly and accurately summarized the record.

The ALJ noted that Dr. Ward recorded that Plaintiff was non-cooperative with

physical examination.  There is no merit to Plaintiff's assertion that the ALJ inaccurately

represented the record by omitting the part of Dr. Ward's notes that Plaintiff says "reflect

Plaintiff was too agitated and distracted to comply with the examination."  [Dkt. 12, p. 5].

What Dr. Ward reported was Plaintiff was "agitated distracted unable to follow history is

fragmented and basically incoherent short answers to direct questions were required to

give any history at all."  [R. 412].  A fair reading of this statement is that Plaintiff did not give

a coherent history.  The undersigned finds that the ALJ's failure to include this observation

in his summary of the record does not unfairly represent Dr. Ward's observations about

Plaintiff being uncooperative with the physical examination.  In fact, Dr. Ward remarked at

more that one place in his notes for that day that Plaintiff gave exaggerated pain responses

and that he was unable to perform an adequate examination.  [R. 410, 412, 413, 414].

8

Development of Record

Plaintiff claims that the ALJ failed in his duty to develop the record because some pages contain alphabetic codes relating to work status.  There is no way to decipher the codes to determine what work restrictions they contain.  Plaintiff argues that the ALJ was required to obtain the key to the codes and having failed to do so, it is apparent the ALJ could not have considered these restrictions.  [Dkt. 12, p. 7].

The undersigned has reviewed the pages cited by Plaintiff, [R. 223, 224, 226, 229, 230].  The cited records are notes from the MedCenter from August 2009 to October 2009 concerning treatment of a work-related thoracic strain that occurred in June 2009.  The MedCenter pages contain a section labeled "Work Status" where the health care provider checks whether Plaintiff is able to work, or not.  The section also contains alphabetical designations for restrictions that are circled, as applicable.  Although the meaning of the restrictions is not clear from those pages, it is evident from other parts of the record that the Med Center designations do not contain permanent restrictions.  In an office evaluation performed by orthopedic surgeon, Randall L. Hendricks, M.D., on November 25, 2009, Dr. Hendricks recommends Plaintiff return to work with no specific restrictions.  [R. 243].  Dr. Hendricks performed another evaluation in January 4, 2010, where he recommended a 50 pound weight restriction and that Plaintiff lose weight and exercise.[5]  [R. 222].  Based on

---

[5]  In her reply brief, Plaintiff asserts that the ALJ rejected Dr. Hendricks' opinions as bearing on an issue reserved to the Commissioner.  [Dkt. 18, p. 2].  The ALJ clearly explained that he rejected only the aspects of Dr. Hendricks' opinions that "would require application of vocational factors and could direct the determination of disability[.]"  [R. 25].  In any event, regardless of the ALJ's rejection of any aspect of Dr. Hendricks' opinion, his records are cited here to illustrate that whatever restrictions were imposed by the MedCenter cannot be construed as uncontradicted permanent restrictions.

the foregoing, the undersigned finds no error in the ALJ's failure to obtain the codes to decipher the obviously short-term work restrictions in place right after Plaintiff's injury.

## Credibility Determination

"[C]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir.2010) (internal quotation marks omitted).  Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted).

The ALJ gave numerous reasons for finding that Plaintiff's allegations were not entirely credible:  her activities are inconsistent with her allegations; her claim that she is bothered by fumes and smoke is inconsistent with smoking cigarettes; she has been non-compliant with CPAP therapy and medications; she has not received mental health treatment, except medication Adderall; her treating physician expressed doubt about her compliance with Adderall; Plaintiff gave inconsistent statements to Dr. Gilstrap and Dr. Ward about the severity of her MRI findings; Plaintiff had only a sporadic work history prior to the alleged onset of disability date; and she received unemployment benefits and actively looked for work after the alleged onset of disability date.  [R. 28-29].

Plaintiff argues that he ALJ's credibility analysis is not supported by substantial evidence because she did not mislead any physician about MRI results.  Since the record contains different statements by physicians concerning MRI results, [R. 416, 433], the undersigned agrees that Plaintiff's statements about the MRI results are not a sufficient basis to discount her credibility.  However, as demonstrated above, that is not the only

reasons the ALJ gave for the credibility determination.  The remaining factors listed by the ALJ are appropriate considerations[6] and are supported by substantial evidence.

Plaintiff argues that before the ALJ may rely on the failure to follow treatment as a credibility factor, the ALJ is required to consider whether he treatment would restore the ability to work, whether the treatment was prescribed, and whether it was refused, and whether the refusal was without justification, citing 20 C.F.R. §404.1530.    The considerations set out in 20 C.F.R. §§ 404.1530 and 416.930 relate to situations where a claimant is disabled, but benefits are denied for failure to follow prescribed treatments. Here, the ALJ did not deny benefits on the ground that Plaintiff failed to follow treatments. Rather, the ALJ properly considered Plaintiff's compliance with treatment in assessing the veracity of her claim that her discomfort is so severe as to preclude any ability to work.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372-1373 (10th Cir. 2000)(ALJ properly considered attempts Plaintiff made to relieve pain in assessing credibility).

## RFC Determination

Plaintiff points to findings in the record that at one time or another she had parasthesias of the left hand and swelling in both hands, [R. 226, 229, 404, 406], arthritis and decreased range of motion in the left shoulder, [R. 344, 348], and tenderness in both shoulders, [R. 406], which Plaintiff asserts are inconsistent with the RFC which includes no

---

[6] In an unpublished opinion, a panel of the Tenth Circuit has recently held that the fact that the plaintiff actively sought employment while maintaining she suffered from disabling pain is a legitimate ground for the ALJ to discount her credibility.  *Vigil v. Colvin*, — Fed.Appx. — (10th Cir. 2015), 2015 WL 4902038, at *2; (*citing. Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir.2013) (observing that claimant's interest in returning to work during the period when she was allegedly disabled supported ALJ's adverse credibility finding)).
    A list of considerations appropriate for assessing credibility are listed at 20 C.F.R. §§ 404.1529(c)(3)(i-iv), 416.929(c)(3)(i-iv).

limits on the left arm or hand and permits frequent use of her right arm.  The existence of evidence in the record contrary to the ALJ's findings does not deprive the findings of substantial support in the record.  The Tenth Circuit has stated that the possibility of drawing two inconsistent conclusions from evidence in a case does not prevent an administrative agency's findings from being supported by substantial evidence.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).  The undersigned finds that the ALJ's RFC is supported by substantial evidence.

<u>Vocational Expert Testimony</u>

Plaintiff argues that the ALJ erred in relying on the vocational expert's testimony regarding the number of available positions for the jobs the vocational expert identified as appropriate for Plaintiff's RFC.  The vocational expert testified the number of jobs was based on software and market surveys.  [R. 76].  Plaintiff argues that the testimony is fundamentally flawed because those sources are not recognized as authoritative by the Commissioner in 20 C.F.R. § 404.1566(d), nor did the vocational expert testify that those sources were based on acceptable methodology or consistent with her own professional experience and expertise.  [Dkt. 12, p. 8].

The way Plaintiff poses the issue in her brief one might conclude that, upon questioning, the vocational expert failed to verify that the software and market surveys were consistent with her expertise and experience.  However, the transcript reveals that the vocational expert was not asked or cross examined about the software and market surveys.  [R. 76].  Plaintiff has cited cases in support of her assertion that it is not her burden to cross-examine the vocational expert.  Those cases, *Haddock v. Apfel*, 196 F.3d 1084 (10th

12

Cir. 1999), *Prier v. Colvin*, 2015 WL 1399696 (D. Kan.), address the ALJ's obligation to determine whether the vocational expert's testimony is consistent with the Dictionary of Occupational Titles (DOT). This case does not involve that question. Plaintiff has not cited any authority for the proposition that "case law and the regulations require the [vocational expert] to testify as to the reliability of the publications." [Dkt. 18, p. 3].

The Commissioner has the duty to develop an adequate record relevant to the issues raised. However, an ALJ is normally entitled to rely on the claimant's counsel to structure and present the case. See *Hawkins v. Chater,* 113 F.3d 1162, 1164 (10th Cir.1997). Here, the ALJ was not alerted to any issue concerning the identification or reliability of the sources used by the vocational expert. The undersigned finds that Plaintiff has not shown any basis for reversal of the ALJ's decision.

<u>Conclusion</u>

The undersigned United States Magistrate Judge finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the undersigned United States Magistrate Judge RECOMMENDS that the decision of the Commissioner finding Plaintiff not disabled be AFFIRMED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before December 30, 2015.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions."  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 16th day of December, 2015.

*Frank H. McCarthy*

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

14